# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **KELLY TRIPP, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-01105** |
| | ) | **Judge Aleta A. Trauger** |
| **SAINT THOMAS HIGHLANDS** | ) | |
| **HOSPITAL, LLC, DBA ASCENSION** | ) | |
| **SAINT THOMAS HIGHLANDS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff Kelly Tripp has filed suit against Saint Thomas Highlands Hospital, LLC, DBA Ascension Saint Thomas Highlands ("Highlands Hospital" or "Hospital") and three other affiliated entities (Saint Thomas River Park Hospital, LLC, Saint Thomas Stones River Hospital, LLC, and Ascension Health), asserting several claims under Title VII of the Civil Rights Act of 1964 ("Title VII") based on allegations of discrimination based on religion and retaliation for engaging in protected activity plus one claim for violation of the Age Discrimination in Employment Act ("ADEA"). (Complaint, Doc. No. 1.)

Now before the court is the defendants' Motion for Partial Dismissal of Complaint (Doc. No. 13) that (1) seeks dismissal of all claims against defendants Saint Thomas River Park Hospital, LLC, Saint Thomas Stones River Hospital, LLC, and Ascension Health on the grounds that these defendants are not alleged to have employed the plaintiff and are otherwise improperly named as defendants in this case; and (2) seeks dismissal of the ADEA claim on the basis that it is time-barred.

The plaintiff does not oppose the dismissal of Saint Thomas River Park Hospital, LLC, Saint Thomas Stones River Hospital, LLC, and Ascension Health. (Doc. No. 17, at 2.) Accordingly, the court will grant without further discussion that portion of the defendants' motion seeking dismissal of these entities as party defendants in this case.

The plaintiff opposes the dismissal of her ADEA claim, arguing that it is timely. (Doc. No. 17, at 3–4.) The defendants filed a Reply. (Doc. No. 18.)

For the reasons set forth, herein, this portion of the defendants' motion will be granted in part and denied in part.

## I. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Courtright v. City of Battle Creek, 839 F.3d 513, 518 (6th Cir. 2016).

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted).

## II.    FACTS[1]

Plaintiff Kelly Tripp, a "devout Christian" who was at all relevant times more than 40 years old, was employed in a highly paid management position by Highlands Hospital at its facility in Sparta, Tennessee as of mid-2021. Beginning in July 2021, the Hospital implemented a mandatory policy relating to the Covid-19 vaccine. Although Tripp requested an exemption from the policy due to her sincerely held religious beliefs, she was denied an exemption on October 1, 2021. She promptly appealed that decision, but her appeal was denied on October 10, 2021, when she was notified that she "would be expected to comply with the vaccination requirement by November 12, 2021." (Doc. No. 1 ¶ 34.)

Although a Human Resources ("HR") representative subsequently told her that she would have until January 4, 2022 to be vaccinated or lose her job, Tripp was terminated on or about November 11, 2021. (*See* Doc. No. 1 ¶ 41 (noting that she received a COBRA notice from Highland Hospital informing her that she had experienced a termination event on November 11, 2021).[2]) Her job was "given to a younger employee." (*Id.* ¶ 5.) The plaintiff specifically alleges

---

[1] The facts set forth herein are drawn from the Complaint and are viewed in the light most favorable to the plaintiff, unless otherwise indicated.

[2] There appears to be some confusion as to whether the termination occurred on November 11 or November 12, 2021. This confusion is not material, however.

that the defendant "used Plaintiff's objection to the vaccine as an opportunity to replace her with someone younger" and that it "hired a younger individual into Plaintiff Tripp's prior management position." (*Id.* ¶¶ 50, 51.)

On December 8, 2021, the defendant reached out to ask Tripp if she would be willing to come back to work. In a telephone conversation with HR and Tripp's direct supervisor on December 10, 2021, however, Tripp was notified that she would not be reinstated to her old job but would instead be permitted to use paid time off ("PTO") until another position could be found for her. On December 20, 2021, she was offered the opportunity to return to work, but in a less prestigious, non-salaried job at a substantially reduced rate of pay. The plaintiff returned to work under these conditions on February 6, 2022. She resigned in October 2022 "[b]ecause the reinstated position did not effectively mitigate [her] economic loss, nor restore her career, and because of the emotional stress and injustice from suffering wrongful termination." (*Id.* ¶ 53.) She alleges, "[b]ased on information and belief," that the defendant reinstated "other employees back into the same positions that they were wrongly removed from when they refused to get vaccinated." (*Id.* ¶ 49.)

In support of her ADEA claim, Tripp specifically asserts that she was over age 40 in 2021; she "suffered adverse employment actions in that she was suspended without pay, terminated, and brought back to work at a substantial reduction in pay, and suffered change in her employment that significantly undermined her future career prospects" when she went from a "management salary position" to an hourly, non-salaried position. (*Id.* ¶ 129.) She alleges that she was replaced by a "sufficiently younger employee" who lacked her experience and skill, as demonstrated by the fact that Tripp was required to train the new employee before her termination went into effect. (*Id.* ¶¶ 127, 128.) She asserts that, "[b]ut for her age," she "would have been reinstated to her former

management position" and that she was "also treated differently than other similarly situated employees, in that the other employees who requested a religious accommodation were not terminated, only suspended, and eventually reinstated to their former positions." (*Id.* ¶¶ 131, 130.)

Tripp alleges that she timely exhausted her claims by filing charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and that she received notices of her right to sue from the EEOC on July 24, 2023, less than 90 days before she filed this lawsuit. (*Id.* ¶¶ 12, 13.)

She did not file her EEOC charges with her Complaint, but the defendant submitted them as exhibits to its Motion for Partial Dismissal. (Doc. Nos. 13-1, 13-2.) The first one ("December 2021 Charge") indicates on its face that it was filed on December 29, 2021 with the Tennessee Human Rights Commission and the EEOC, and it alleges discrimination and retaliation on the basis of religion only. (Doc. No. 13-1, at 2.) It asserts that the discrimination/retaliation took place between November 1, 2021 and November 12, 2021, when the Hospital "did not approve [Tripp's] request to be exempt from vaccination and forced [her] to resign as the only accommodation that would not create an undue hardship on the company." (*Id.*)

The second EEOC charge ("September 2022 Charge") does not contain any reference to a "State or local Agency, if any" and instead reflects that it was filed directly with the EEOC. (Doc. No. 13-2. at 2.) It was filed on September 20, 2022 and alleges that, from November 12, 2021 (as the "earliest" date "discrimination took place") and January 3, 2022 (as the "latest" such date), the plaintiff suffered discrimination based on "age, religion, retaliation." (*Id.*) Tripp alleges:

> I was demoted and discharged due to my age and because I requested a religious accommodation. During my employment, I requested a religious exemption, but my request was denied, and I was demoted from a Unit Manager to an Intake Specialist with a substantial salary reduction . . . . I was discharged without pay from November 12, 2021, until January 2, 2022. My position as Unit Manager was

given to a younger employee. On January 3, 2022, I was informed I would be placed back to my [original] salary, but I'm currently working [at the reduced salary].

(Id.) As noted above, Tripp resigned in October 2022, shortly after filing her second EEOC charge.

The plaintiff filed her Complaint initiating this lawsuit on October 19, 2023. The Hospital responded by filing its Motion for Partial Dismissal.

## III.    ANALYSIS

### A.    Consideration of Matters Outside the Pleadings

As a threshold matter, the court finds that it may consider the EEOC charges without converting the defendants' motion into one for summary judgment. These documents were not filed with the Complaint but were attached as exhibits to the defendant's Motion for Partial Dismissal. However, the plaintiff references the EEOC charges in her Complaint, alleging that she filed timely charges with the EEOC. Through this allegation, the plaintiff effectively acknowledges that the EEOC charges are integral to her claims, insofar as administrative exhaustion of Title VII claims is statutorily required and her ability to proceed with her claims depends on timely exhaustion. In addition, Tripp does not object to consideration of these documents, and district courts within the Sixth Circuit have generally accepted that "EEOC charges and related documents, including right to sue letters, are public records of which the court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment." *Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 862–63 (N.D. Ohio 2013); *accord Brown v. RCO Eng'g Inc.*, No. 23-11371, 2024 WL 1019258, at *2 (E.D. Mich. Mar. 8, 2024); *Berry v. Dep't of Veterans Affs.*, No. 3:20-cv-590-DJH-RSE, 2021 WL 6108010, at *1 (W.D. Ky. Aug. 25, 2021).

### B.       Consideration of Timeliness on Motion to Dismiss

A secondary threshold matter is the propriety of considering the timeliness of the plaintiff's EEOC filings at the motion to dismiss stage. The untimeliness of an EEOC charge is an affirmative defense. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). A plaintiff is generally not required to "plead the lack of affirmative defenses to state a valid claim." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (citing Fed. R. Civ. P. 8(a)). "For this reason, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Id.*

At the same time, however, when the allegations in the complaint—and other documents appropriately considered along with the complaint—"affirmatively show that the claim is time-barred," dismissal of the claim under Rule 12(b)(6) may be appropriate. *Id.*; *see also Courser v. Mich. House of Representatives*, 831 F. App'x 161, 169 (6th Cir. 2020) ("[W]hen reviewing a 12(b)(6) motion, a district court 'may consider'—without converting the motion to a Rule 56 motion—'the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case[,] and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.'" (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### C.       ADEA Statutes of Limitation

The ADEA requires that an individual exhaust available administrative remedies by filing a charge of unlawful discrimination with the EEOC before filing a lawsuit. See 29 U.S.C. § 626(d)(2); *Jones v. Johnson*, 707 F. App'x 321, 328 (6th Cir. 2017) (citing *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 731 (6th Cir. 2006)). Generally, this means that a claimant asserting discrimination in violation of the ADEA (or Title VII) must file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act. *Amini v. Oberlin Coll.*, 259 F.3d 493,

498 (6th Cir. 2001) (citing 29 U.S.C. § 626(d)). However, in so-called "deferral states," including Tennessee, the claimant generally must file a charge within 300 days of the discriminatory action. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 375–76 (6th Cir. 2002) (citing 29 U.S.C. § 626(d)(2); *Jackson v. Richards Med. Co.*, 961 F.2d 575, 578–79 (6th Cir. 1992)). Once the EEOC issues a notice of right to sue, the plaintiff has 90 days from receipt thereof to file suit in federal court. *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 521 (6th Cir. 2021); 29 U.S.C. § 626(e).

There is no dispute that the plaintiff filed suit within 90 days of receiving notice of the right to sue. The question is whether she exhausted her ADEA claim by filing the EEOC charge within the requisite timeframe. The 300-day period begins to run when "the employment action at issue is communicated to the plaintiff." *Amini*, 259 F.3d at 498. The limitations period, characterized by the courts as a "condition precedent" to bringing a federal lawsuit for employment discrimination, is non-jurisdictional and subject to equitable tolling and waiver. *Zipes*, 455 U.S. 385, 398 (1982). Because the timely exhaustion of administrative remedies is a prerequisite to filing suit under the ADEA, a plaintiff must adequately allege timely exhaustion in her complaint, and a plaintiff who "has failed to do so has failed to state a claim" for which relief may be granted. *Grooms v. Walden Sec.*, No. 3:21-cv-00363, 2022 WL 949842, at *3 (M.D. Tenn. Mar. 29, 2022) (Richardson, J.) (citations omitted).

### D. Application of Limitations Period to ADEA Claim

The December 2021 Charge does not allege age discrimination; only the September 2022 Charge states a claim under the ADEA. As noted above, it was filed on September 20, 2022. The Complaint (like the September 2022 Charge) alleges that Tripp "suffered adverse employment actions" for purposes of her ADEA claim when "she was suspended without pay, terminated, and brought back to work at a substantial reduction in pay," in a non-salaried, non-management position. (Doc. No. 1 ¶ 129.) She also alleges that she was replaced by a "sufficiently younger

employee" whom she helped train and that, "[b]ut for her age," she "would have been reinstated to her former management position." (*Id.* ¶¶ 127, 128, 131, 130.)

The Hospital argues that the only discrete adverse event that the plaintiff complains about is her termination on November 12, 2021, when she was replaced by a younger employee. It asserts that, irrespective of whether a 180-day or a 300-day limitations period applies, the claim is time-barred because the September 2022 Charge was filed more than 300 days after the November 12, 2021 termination. (Doc. No. 14, at 4–5 & n.3.) The Hospital specifically submits that the 180-day limitation period applies, because the September 2022 Charge was filed only with the EEOC and not with the Tennessee Human Rights Commission, the relevant state agency. It also takes the position that the court "need not resolve whether the 180- or 300-day limitations period applies to Plaintiff's ADEA claims in order to rule on Defendants' motion for partial dismissal, because Plaintiff did not file her second EEOC charge for alleged age discrimination and retaliation until well over 300 days after her discharge and replacement." (*Id.* at 4–5 n.3.)

In her Response, Tripp appears to disavow any intention to state an ADEA claim based on her termination in November 2021, stating: "Defendant confuses Plaintiff's claims of religious discrimination, and her age discrimination claim. Defendant initially terminated Tripp due to her religion – her religious refusal to get vaccinated. This took place effective November 11, 2021." (Doc. No. 17, at 3.) This assertion appears to be in direct conflict with the allegations in the Complaint that she suffered an adverse employment action for purposes of her ADEA claim when she was "suspended without pay, terminated," and "replaced by a sufficiently younger employee." (Doc. No. 1 ¶¶ 127, 129; *see also id.* ¶¶ 50, 51.) In any event, it is clear that, if she intended to state a claim for ADEA discrimination based on her termination on November 12, 2021 and replacement at that time with a younger employee, the claim is time-barred, regardless of whether

the 180-day or 300-day limitation period applies, as that discrete event took place more than 300 days before the plaintiff filed the September 2022 Charge.

The plaintiff now characterizes her ADEA claim as premised upon the fact that, when she was reinstated, she was not reinstated to her original position but was instead placed in a lower-level, non-management, non-salaried position, earning approximately 40% less than before her termination. She asserts that the statute of limitations for her ADEA claim should begin to run either on December 20, 2021, when she was offered reinstatement, or February 6, 2022, when she actually began working in the "inferior position," both of which took place less than 300 days before she filed the September 2022 Charge. (Doc. No. 17, at 3.) In addition, she argues that, even if the court determines that a 180-day limitations period applies, the "continuing violations doctrine" makes her claim timely, because she suffered continuing discrimination every day she went to work and with every paycheck she received, up through the date of her resignation in October 2022. (*Id.* at 3–4.)

In its Reply, the Hospital argues that the continuing violations doctrine does not apply, because the plaintiff's termination and replacement by a younger employee were discrete events that became actionable immediately upon their occurrence. It reiterates that the court need not decide whether the 180-day or 300-day limitation period applies (*see* Doc. No. 18, at 3 n.1), and it asserts summarily that the plaintiff's termination and replacement are "the only discrete acts of *age-based* discrimination and retaliation" alleged in the Complaint (*id.* at 4). The Hospital maintains that "it is immaterial for statute of limitations purposes that these discrete events may have arguably had a continuing impact on Plaintiff when she was offered subsequent employment with Highlands Hospital" and "accepted and started working" in a lower-level position at reduced pay. (*Id.* at 4–5.)

The court finds, first, that, if the 180-day limitations period applies, the continuing violations doctrine will not save the plaintiff's ADEA claim from being time-barred. That doctrine does not apply "when an employee seeks redress for discrete acts of discrimination or retaliation . . . that occurred outside the filing period." *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "Discrete acts" include such easily identifiable events as "termination, failure to promote, denial of transfer, or refusal to hire." *Morgan*, 536 U.S. at 114. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* These discrete events are in contrast to hostile environment claims that, by "their very nature involve[] repeated conduct." Id. at 115. The plaintiff's termination and her reinstatement in a lower-paid and less prestigious job both qualify as discrete, easily identifiable acts.

In this case, the plaintiff's continuing violation theory appears to be premised upon her belief that each reduced paycheck reflected continuing discrimination. She is incorrect; the courts have made it clear that a plaintiff's continued receipt of paychecks for less than she believes she should have been paid does not, standing alone, establish a continuing violation. Rather, "the statutes of limitations for actions predicated upon employment discrimination are triggered at the time when the alleged discriminatory act occurred, and not at the time when the last discriminatory effects have been manifested." *E.E.O.C. v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 837 (6th Cir. 1988) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980); *United Airlines, Inc. v. Evans*, 431 U.S. 553, 557 (1977)). And "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* (quoting *Del. State Coll.*, 449 U.S. at 257).

Here, Tripp's paychecks reflected mere continuity of employment. The amount of her pay was determined at the time of her reinstatement at the lower-level job. Moreover, Tripp does not actually allege that her pay, *per se*, was discriminatory, as she does not, for instance, allege that she was paid less for the same job than similarly situated non-protected employees. Rather, the discrete action she claims to have been discriminatory was her placement in a lower-level job in the first place, which simply came along with a lower rate of pay. If this were sufficient to extend the statute of limitations under a continuing violation theory, virtually every claim based on a demotion or a failure to promote would implicate the doctrine, since the adverse action would be reflected in every subsequent paycheck. But the Supreme Court has made it clear that tolling doctrines "are to be applied sparingly" in the employment discrimination context. *Morgan*, 536 U.S. at 113. In short, the continuing violation doctrine does not apply to extend the statute of limitations under the circumstances presented here.

That said, the defendant here, without waiving the argument, does not ask the court to apply the 180-day limitations period; nor does it actually address the plaintiff's allegation that the Hospital's refusal to reinstate her to the same position she had vacated due to the vaccine controversy was an adverse employment action for purposes of her ADEA claim. That event occurred within 300 days of the filing of the September 2022 Charge. The Supreme Court has expressly recognized that adverse employment actions include "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008). This formulation clearly encompasses the plaintiff's reinstatement at a less

prestigious job for less pay, which qualifies both as a reassignment with significantly different responsibilities and a decision entailing a significant change in benefits.

Because the defendant does not ask the court to resolve whether the 180-day or 300-day limitations period applies, the court declines to resolve that issue and simply finds, for purposes of the Motion for Partial Dismissal, that the Complaint states a colorable ADEA claim based on the plaintiff's reinstatement at a lower-level position than the one she had previously held. Because that event fell within 300 days of the filing of the September 2022 Charge alleging ADEA discrimination, the court cannot conclusively determine at this juncture that the claim is time-barred.[3] The Hospital is not entitled to dismissal of this claim.

## IV. CONCLUSION

For the reasons set forth herein, the Motion for Partial Dismissal (Doc. No. 13) will be granted in part and denied in part. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

[3] The Hospital remains free to move for summary judgment of this claim if the facts as developed through discovery conclusively establish that the September 2022 Charge is subject to a 180-day limitations period.